My name is George Marcus. I am an attorney in Portland, Maine. I represent the Parkview Adventist Medical Center. I'd like to reserve five minutes for rebuttal. You may have it, but could you start by telling us which, what's at stake here, which payments are you seeking for what period of time? Yes. At this time, we're not actually seeking any payments. What we are seeking is the effective reinstatement of our provider agreement with Medicare for the period of time now, July 4th, 5th, I believe, through August 20th. Now, originally, Parkview filed this chattel... How much is... I don't have it all around because we haven't submitted any requests for reimbursement because we're not permitted to submit those. And your client hasn't calculated them, so you don't actually know what this case is worth? Well, we do, and the client can tell from the services it rendered the case is worth several million dollars. Now, having said that, this really... So you're saying that seven million dollars calculated, how, that the payments you would get from the moment that you would reinstate the contract? Yes, Your Honor. Until when? August 20th. On August 20th, the hospital was sold, and we have no claim for rendering any services under the provider agreement after August 20th. When you say the hospital has sold you... The Parkview Hospital. What was left of the hospital, the outpatient department, I assume that's what you're talking about. Yes, Your Honor. Now, is there some other way of recouping the money other than through what you're trying to do here for the outpatient services? Because as I understand it, you ceased being a hospital because you no longer took inpatients. And therefore, you had outpatient services. Is this the only way that you think you can recover for those services? It's the only way we've been able to come up with, Your Honor. We don't concur necessarily that we ceased being a hospital for the purpose of the definition under Medicare. Now, I concede that's not an issue... Before you go on, and thank you for that concession, you've now confused me. I thought that you were in fact being paid for the outpatient services because those had not been terminated, the Part B services, and that this dispute was about the Part A services. No. Could you clarify? Yes. It also covers the Part B services because... What do you mean it also covers? Because the termination of the provider agreement also eliminated Parkview's ability to send bills for Part B outpatient services. Okay. It also terminated Medicaid, which is the state of Maine's MaineCare version. We couldn't get paid for that either. Just one last clarifier. I don't know. It probably isn't the last. But to be precise, when you say you're seeking reinstatement of the contract, are you seeking that or are you seeking simply to treat as null the withdrawal letter that was sent? Do you understand the difference between those two things? I do, and I would say that your formulation is probably more accurate. We're treating to seek as a nullity the letter from CMS purporting to terminate the provider. If I'm right about that, so that's nullity, the issue of whether you then still have a contract would be up for dispute separately. Correct. But I guess the question that raises is if you were... That would then separately raise an issue of who has jurisdiction over that question. It would, Your Honor. Okay. So then that just raises me, what are we fighting about here? Because if we think about anything that matters, if it turns out that you really couldn't get meaningful relief unless you actually could get the contract reinstated, which might be something that isn't for this court in this suit and doesn't go for us as a question, that's what I'm a little puzzled by. Well, Your Honor, I believe that removing the termination purported to be made by CMS is a precondition to any further relief that we may seek. Now, we will have an argument at some point as to where is that relief sought? And this court doesn't need to decide where is that relief sought. One could say that the bankruptcy court has exclusive jurisdiction over claims of part view under Section 1334E of the Bankruptcy Code. That's our contention. Now, I recognize that the Medicare CMS would say, oh no, you have to exhaust the administrative process through Medicare. We don't concede that. But that's not before the court now. But I'm trying to think of what this does practically. Because if you could get it reinstated, your argument is that the automatic stay gives you the time to decide whether you're going to accept or reject the contract. Isn't that what you're talking about? So what contract can you accept or reject? Because in fact, once you cease doing inpatients, whether that makes you a hospital or not, it seems to me that there's no contract with the bilateral terms which originally existed. So what are we talking about? The choice under the Bankruptcy Code is not limited to accept or reject. There's a third choice, and that is perform. A debtor in bankruptcy, and we maintain this right for part view, has the right to perform under the provider agreement. But you can't perform. Until August 20, we maintain we were performing because we were operating our facility. We don't concur with the notion that the transition of our outpatients to our buyer results in our disqualification as a hospital. I don't want to interrupt if you're still answering. Go ahead. Finish your thought. Yes. Our position is that there's a period of time, the date of filing, let's say June 18, when Medicare purported to terminate the provider agreement to August 20, when we were, in fact, operating as a hospital, and we were, in fact, entitled to reimbursement for both, I'm sorry, for services we rendered. Now, it is true that we ceased rendering services to inpatients on about the 18th of June. But we maintain that that does not necessarily mean that the provider agreement and the obligation of Medicare to pay for inpatient services goes away, nor does the obligation of the state to pay Medicaid claims goes away. We think these are viable claims. I mean, there are cases where hospitals stop serving outpatients for a whole bunch of reasons. It may be because they had a flood. Hurricane Katrina flooded all kinds of hospitals and they stopped serving outpatients. There may be new renovations. We had a transition plan, in effect, in our bankruptcy case, and we maintained that that maintained our qualification as a, quote, hospital, end quote, for the purpose of Medicare. Now, that's a preview of the conversation that will be had should the court determine that the unilateral termination of the provider agreement violated the automatic stay for Section 365 of the Bankruptcy Code. Maybe this will help me understand it, and I guess it's in two parts. One's a hypothetical, which I think will help me clarify, but the other is just to understand what you're specifically saying here. One thing you could be saying, if I'm following, is that perhaps they could terminate the contract, but they don't have to terminate the contract. They would have discretion to keep the contract in some form if they wanted. Yes, Your Honor. And so the problem then would be, post-petition, they made the discretionary choice to terminate rather than to come to some accommodation. And then you're saying, post-petition, they simply can't do that because the stay is in place. So that choice couldn't have been made when it was made. Is that the idea? I believe so, Your Honor. What I'm saying is, they made the choice, and I believe the choice violates federal bankruptcy law. I believe that if they wanted to initiate termination, they should have followed applicable procedures. I think they should have come to the court and asked for a release from stay. Okay, I get that. But let me just give you the hypothetical then to see if it's the same case as this one or a different one. Suppose we're talking about an insurance contract, and the insurance contract, by terms, expires six months after the petition happened to be filed. Okay? Yes. So now we're post-petition. The insurer sends a letter to the insurer saying, well, I just noticed the six months have run. So contract is terminated. You could say, well, that letter can't be sent post-petition. But you've got to say, that's kind of crazy because without the letter, it terminates anyway by terms. So there's simply no contract. So what are we talking about? The stay doesn't seem to do anything because the contract expired without the letter. As I understand the government's argument, they seem to be arguing here that we're like that insurance contract. You stop being a hospital. They didn't need to send a termination letter because the contract just terminated. So why does the stay matter? Do you follow? I do, Your Honor. And the analogy to the insurance policy would be a perfect one for Medicare if it were the case that there were a clause in the provider agreement that said, the minute you stop serving any outpatient, you can't get any money for anything. If that were the contractual term, that argument might have more force. But it doesn't have force because there's nothing of that sort. They are relying upon a definition and a regulation. What is a hospital? And if you stop serving outpatients, it's not a hospital. If we disagreed with you about how to read the Medicare statute, your argument then, that premise of the argument falls apart. That premise might. Does that change the jurisdictional question in your argument? No, no. So the fact that we have to decide that predicate question about how to construe the Medicaid Act does not affect our jurisdiction? Correct, Your Honor, because frankly, I'm not sure if that issue was really before the court. The issue before the court is, was it wrong for us to get it thrown out of the game right when it started? We say, that violated the automatic stay. It violated section 365. And the bankruptcy court had the right to do that. What about the public exception to the automatic stay? Yes, this court has held in prior cases, the Concepcion case in particular, that a contract dispute does not rise to the level of the regulatory and public policy exception. In Concepcion, there was in fact a contract dispute between a government agency... That depends on how you characterize it. All right, you've given me your answer. Thank you. Thank you very much. Good morning, Your Honors. May I please have a quote on Jeffrey Clay? I'm here for the government. Your Honors, if I may, I would like to refocus the quote on what I think is really the threshold question in the case, is whether this court and the lower courts had jurisdiction to entertain any of these claims. Now, what are the claims, I think, is the first question. And if you look at page 170 of the appendix, you'll see the prayer for relief in the motion that precipitated this controversy. And what the prayer for relief asks for is an order reinstating the Parkview Hospital in the Medicare program, nullifying the termination of it from the Medicare program, and an order, notwithstanding what counsel has said, directing the Secretary to make Part B reimbursement under the Medicare program for the period between the commencement of the petition until the bankruptcy court closes the case. So what you have are two sorts of claims, whether the provider can maintain its eligibility under the Medicare statute and be a participating provider, and whether the provider should get paid for services rendered during that period between the commencement of the petition and the close of the case. Those are indisputably claims where the provider's standing and the substantive basis for its claim arise under the Medicare statute. And what Section 405H is construed by the Supreme Court has said is all such claims must be channeled through the administrative process and the jurisdiction of any forum, a district court or a bankruptcy court, is precluded until those remedies are exhausted. Are those two independent requirements, the exhaustion requirement and then the funneling of jurisdiction? Well, Your Honor, I'm not quite sure I understand Your Honor's question. What 405H jurisprudence says is that the claim must be first presented to the Secretary. There is a presentment requirement. And then there's an additional, an exhaustion requirement that can be waived by a court in certain very narrow circumstances or waived by the Secretary. In this case, the Secretary certainly hasn't waived the exhaustion requirement. And this really goes to an argument presented more by the amicus than by appellant here. It's whether or not, withstanding the Secretary's failure to waive exhaustion, the court can waive exhaustion. Now, the lead case there is Matthews v. Eldridge. And it relies for a sort of gloss on what constitutes a final decision under the Medicare statute on the Cohen case, which establishes the collateral order doctrine, a doctrine I'm sure the court is familiar with from its other cases of appellate jurisdiction. And what the collateral order doctrine says is that not only must you find that exhaustion would be fewer, but the claim must be collateral to the merits. That's an indispensable requirement. And finally, a demand for payment out of the Medicare trust funds, and a demand to reinstate the provider in the program, the principal basis for participating in the program and demanding reimbursement. Those are not claims that are collateral to the merits in any sense of the word. What about a claim that the withdrawal order is a nullity? Well, it is still a claim that the Secretary did not have construed a statute. Sorry to say that, Your Honor. It is still a claim that the Secretary's termination of the provider from the program must be invalidated. Now, the legal theory for that claim may rest on principles of bankruptcy law. But that doesn't matter. It's still a claim for program eligibility. No, no, no. I understand you say that the prayer relief has a request for an order to reinstate and a request for payment. I understood, but maybe I'm wrong, also to be a request to declare as a nullity the withdrawal letter. Well, Your Honor, I think... Did you request that or not? You don't need them to request that separately? Your Honor, respectfully, I'm not sure I see a difference between declaring the termination letter a nullity and directing that the provider be reinstated. Because there's no order of any relief to the Secretary to do anything. It's just there's a letter right now terminating it. They say that was filed post-petition. Under the bankruptcy laws, you can't take an action post-petition with respect to the estate. So we have to treat that as nothing. The reason that it's nothing is because of the bankruptcy laws. So they want to say that when I go back to CMS, maybe I do it under 405G or 405H, like you say, they have to. They say to them, look, here's my situation. I have a contract. There's no termination letter because that termination letter was declared a nullity by the bankruptcy courts up through appeal. So given that there's no termination letter, do I still have a contract? Maybe that has to go through the Secretary and up through 405, I forget, is it H or G or both together. That may not be something that we have jurisdiction over. But their question of could that action be taken post-petition, they say only the bankruptcy court can resolve that question. First of all, is that issue, the way I'm seeing the issue, is that actually something they requested in your understanding? I haven't thought of it in those terms. I read the prayer for relief because they seem to be characterizing it to us is the way I'm putting it. I understand. And again, if the termination letter is declared null and void, that means the Secretary's action terminating from the program is null and void, and that in turn means they must be reinstated in the program. No, I thought their whole argument is that might not be the case because the argument the government could make is you don't need a withdrawal letter because they are reading that as a discretionary exercise of what remedy follows from the fact that you stop providing, that the hospital stop providing inpatient services. But you would still, as the government, have the option of saying, look, under the contract, if you don't pay the inpatient, don't provide the inpatient services, you're out as an automatic matter. That's a fit question for the Secretary to resolve pursuant to 405 H and G. But they're simply saying the withdrawal letter skipped a step by making that discretionary judgment post-petition. Bankruptcy law forbids that from happening post-petition. So if you want to make your argument that the effect of the withdrawal letter being null and void is no effect at all, that can come up when they make a proper claim before the Secretary. Right, Your Honor, and again, if I might ask a rhetorical question, what gives them standing to ask for the withdrawal letter? Now you're meeting their argument directly. So if you think they don't have standing... Well, in terms of... Because what they say is standing is that a predicate for them being able to make the argument I just raised to the Secretary is getting rid of the withdrawal letter. So their standing is to get rid of this legal obstacle to them presenting a claim to the Secretary. Right, it's still entwined with a claim for participation in the Medicare program and a claim for benefits. The notion that you can sort of hermetically seal the nullification question from what happens after that, whether they should be allowed to continue in the program, whether they should be allowed to demand reimbursement, those I don't think can really be pulled apart and treated as separate and distinct questions as Your Honor has done. In one regard, in Southview, the court said a test for whether a claim arises under the statute is what's the standing and the substantive basis for the claim. Why would this nullification of the termination other than they want to continue in the program and they want to be paid? Questions of program eligibility, questions of program benefits that are claims that arise under the statute. In theory, they won't have damages if you violated the stay, right? I don't believe there would be a waiver of sovereign immunity for damages against the government if they did violate the stay. These complex jurisdictional questions aside, there's an exception in the state for exercises of the police and regulatory power. By the ordinary plain language of that term, enforcing requirements on who can participate in the program, what kinds of conditions a provider must meet to be deemed a Medicare provider and eligible for reimbursement. Just under a plain, ordinary reading of that language, that's an exercise of the government's regulatory power. And how important is that in the conceptual case? Well, again, this is a government enforcing statutory requirements on disbursement from the federal treasury. It is enforcing congressional determinations of policy as to who should be able to participate in this program and who cannot. Who can be paid for services under what conditions and who cannot. These are intimately connected with questions of federal public policy and the exercise of federal regulatory jurisdiction. Well, I'm sort of curious. What's the effect of the ALJ's determination that the date of termination was incorrectly determined by the agency? A later date is postulated in the ALJ's determination. Does that mean that between the date of the filing and that date that claims for outpatient services would be, in fact, reimbursable? I think all that it means is that they remain a participating provider and that up to that date they can submit claims for reimbursement to the Medicare contractors that process claims. Then the contractor would have to decide well, now we can look at this claim. Are they eligible? If they are not a participating hospital or if they have ceased to provide inpatient services they would be ineligible for payment. Just to close on this, Your Honor, the provider agreement is a necessary but not sufficient condition for payment. But why would that be so? If, in fact, the contract could not be terminated until a different date, a date during the pendency of the bankruptcy, it seems to me they should be able to submit claims for that period. Well, Your Honor, if I might consider a provider that is a fully participating provider that hasn't been terminated, if it submits a claim for payment that does not meet the statutory terms then it's not eligible for payment notwithstanding the fact that it's still a participating provider. Counsel, your brother argued that it would be a different situation if the provider agreement itself had a term saying that if you are no longer a hospital you can no longer receive payment. He said that requirement is in a regulation First, was that ever argued to the Secretary? All that was argued to the Secretary was that the date of the termination was inappropriate because the provider did not intend to voluntarily terminate until the close of the bankruptcy case. And the ALJ said you haven't completely ceased business, you haven't voluntarily terminated in accordance with your right and therefore the termination was an involuntary termination there were grounds for the involuntary termination because the hospital has ceased serving inpatients but the notice requirements the public and provider notice requirements in the regulation had not been satisfied therefore the termination date would be several weeks later. That's all the ALJ decided. The government's brief starts its argument with the bankruptcy court has no jurisdiction and you cite to the new 11th circuit case and the majority of circuits you then also make an argument of well in any event this does not violate the state provisions and there is no discrimination so I take it your alternate argument depends on some notion of hypothetical jurisdiction and they lose on the merits of their bankruptcy claim anyway. Is that correct? The state of the moment the arguments with respect to whether the code has been violated assume that for whatever reason the court either finds jurisdiction or finds it unnecessary to reach jurisdiction under either theory we'd say that if you either want to assume hypothetical jurisdiction which I think was shown in the opening brief you can in fact do with respect to a statutory claim in fact the court has done that in the Ludlow case in circumstances very similar to here or if we we would of course vigorously disagree but if you were to find that there is actually jurisdiction we maintain we still prevail under the code provisions because there is no law under the code to prevent the secretary from regulating the program in this matter. Now I think if you step out for a moment and consider what the provider is asking for it helps throw the issues in a sharper focus. What they are asking for in practical effect is from the moment they petition for bankruptcy until the court grants a confirmation order and closes the case they should be able to participate in Medicare and receive payment for services rendered on terms that flatly contradict the Medicare statute. They're not an inpatient hospital they don't serve inpatient services well in their view they've petitioned for bankruptcy that requirement goes out the window they don't provide services under a framework where they're incurring for outpatient services the same cost that a hospital incurs they should nonetheless get the hospital based rate for outpatient services as if they are a facility that is incurring the same kind of overhead cost for having an outpatient clinic that a hospital claims. The legal technicalities of the case is that the Medicare statute no longer applies once a petition for bankruptcy is filed they get to write their own bills and that's simply not so. Why would that necessarily be so if the bankruptcy court actually had jurisdiction? Wouldn't they still have to submit their bills and prove that they were entitled to reimbursement? If they establish jurisdiction what they want to say is that they don't have to assume or reject their Medicare obligations until they decide to do so at the end of the case and in that window period between the petition for bankruptcy and the close of the case they say that they are entitled to reimbursement on terms that differ from the Medicare statute they are in effect saying whatever they are in effect saying once we petition for bankruptcy we have a right to fashion some right to reimbursement and participation that's greater than any contract we had before bankruptcy it's in derogation of the statutory provisions that apply to any other provider. But everything you're saying seems to fit to me as I'm hearing it is a pretty good argument for why the regulatory exception to the automatic stay should apply in these circumstances more than an argument about a lack of jurisdiction if you just did this as a different scenario in which you're trying to jump the queue as a creditor rather than to prevent them from essentially maintaining a contract going forward that they have no right to maintain the question of whether the government should be able to jump the queue I think looks a little bit different and that seems like a jurisdictional issue about bankruptcy but here you're just saying it doesn't make any sense that there's no contract at all by terms for them to be able to hold things down through bankruptcy but the solution to that seems to be built into the automatic stay provision because it has a regulatory exception which seems to speak directly to the issue you're raising I think the case is certainly much simpler if you look at it just in question of whether stay applies because I think it plainly does but the court still has to address its competency to decide its jurisdictional competency to sell this ground you could hypothetically assume that although that's usually for cases where the merits I think are crystal clear and I would urge the court to consider the jurisdictional issues carefully these issues do come up on that point and if I might your honor just to close on that the Barney Shores case there was a petition for re-hearing on that pending when I filed the brief that petition was denied it was denied okay has there been any effort to go to congress and say there is a problem here because of the failure to cite to 1334 and 1332 and this has been going on for well nigh over 30 years well your honor as I'm a counsel for the university medical center I'm aware of how long this issue has been going on I think after the university medical center there's been quite a shift away from the reasoning this court's decision your honor's opinion and Slater that's a different position on the recruitment question on the merits we have been generally winning these jurisdictional arguments in the courts of appeals which has held that notwithstanding the omission of several jurisdictional bases from the 405H bar the original intent of congress was clear no diversity jurisdiction I know you could win it theoretically in the court of appeals or you could also go to congress I take it that nobody is making any effort to go to congress not that I'm aware of your honor okay unless the court has further questions my time has expired thank you your honor if I may let me address the last point about going to congress because it really highlights our central thesis here and that is the problem with Bayou Shores in that way of thinking about jurisdiction is that it looks at the whole subject in a silo Bayou Shores fails to recognize that there's a whole other life beyond what's happening with section 405H and a whole other life for other legislation in congress that was happening essentially at the same time that the Deficit Reduction Act was passed in 1984 which was the final codification and what was that? that was the 1978 Bankruptcy Reform Act followed by the 1984 Amendments Act and in between those two acts there was a major supreme court case called Marathon Pipeline and all of those were congress's and the courts effort to address the jurisdiction of the bankruptcy courts and to make a major change in that jurisdiction what was the major change? it granted to the district court and the bankruptcy courts exclusive jurisdiction over property of a debtor's estate that was never part of any bankruptcy legislation before 1978 it certainly wasn't a part of it in 1939 or in 1948 when 405H was recodified and the problem with Bioshores and thinking along those lines is they completely ignore a separate silo and that is what's congress trying to do regarding bankruptcy administration and really what congress is trying to do is to say we want all bankruptcy questions consolidated in the bankruptcy court we're giving the bankruptcy courts exclusive jurisdiction exclusive to the rest of the world on property of a bankruptcy estate I believe the issue before the court now is how do we accommodate the Medicare statute and the bankruptcy statute in a way that works and in that regard that allows me to segue into what we're asking for our request for relief number one on the motion to compel was determining that the termination notice is null and void it should not be, it's a violation of the statute our second request for relief was until assumed and rejected can we go back to number one I understood your argument to be dependent entirely on your notion that there was a violation of the stay there are two bases for it one is a violation of the stay and the second one is a violation of the rules of section 365 of the bankruptcy code they both apply so even if one says even if one were to say that the stay doesn't apply because of the public regulation clause I'd say well I disagree but you don't get there because you're still bound by section 365 to honor this contract that's the rule in that section and it's property of the estate and the court has sole jurisdiction how do you get from the 365 saying that the trustee has the right to assume or reject the conclusion that the counterparty to it can't get rid of it if there's no stay because the statute and the jurisprudence under the statute is very clear you don't say any case on behalf of that proposition you just say it in a sentence but you don't have any authority for it and I don't see why that's really properly enforced that's a pretty big ticket position to take when you just read the text it gives a right of the trustee to assume something you're saying not only does it give a right to assume something it prevents anybody from the other party from terminating it even when there's no stay in place to block them well without permission of the court they always have the right to come into court but the statute says that the one who needs to get approval is the trustee to assume or reject it doesn't say the counterparty determining has to get approval and you don't have any case saying otherwise well I submit that the NLRB vs. Bill Disko case stands for the proposition that I'm stating is that saying in your reading? I frankly don't recall I'll tell you I didn't see this argument in your reading here's the reason and the reason is that we're not asking this court to look beyond and say what will life look at once the proper ruling is that the bankruptcy court has a role in this process and that really goes to our second request for relief the first one was treat the termination notice as null and void secondly we say well require CMS to honor the terms of the agreement in accordance with the terms of the provider agreement we're not asking for any special exemptions we're not asking for special treatment we didn't say that because we're a debtor in bankruptcy we get to do this or do that contrary to the agreement and I'll just ask your opponent whether that argument had in fact been presented to the secretary and the reply was no the only argument was as to the effective date the only argument that's been presented for the administrative law judge was whether or not it was a voluntary termination now that was material because CMS previously argued that well this isn't a state issue it's not a problem because parking voluntarily terminated so we don't need to go through all this court stuff we said no no we didn't voluntarily terminate we don't act yes in the involuntary termination but it wasn't a voluntary termination your time is up